## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| ERNEST J. GRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV422-159 |
| | ) | |
| OFFICER DEVIN O'NEIL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Defendants Scott Gashi, Lucas Hinds, Samuel Hunt, Devin O'Neil, and James Ward have moved for summary judgment on *pro se* plaintiff Ernest J. Graham's 42 U.S.C. § 1983 excessive force claim. *See* doc. 23. Graham has responded, doc. 30, and Defendants have replied, doc. 32. Several of Graham's filings suggested that he might seek to conduct additional discovery in response to that Motion, but none of those filings complied with the applicable rules. *See* doc. 50 at 6-8. The Court afforded Graham an opportunity to clarify the intent of those filings and to correct their defects. *Id.* at 8. The deadline for him to do so has passed without any response from Graham. *See generally* docket. The Court, therefore, proceeds to address the merits of Defendants' Motion for Summary

1

Judgment.  Doc. 23.  For the reasons explained below, that Motion should

be **GRANTED**.  *Id.*

## SUMMARY OF FACTS

As the Court previously summarized Graham's allegations:

> He alleges that on March 2, 2022, defendants Hinds, Gashi,
> and O'Neal fired gunshots into a car he was driving.  *See* doc.
> 1 at 5.  He does not allege that any of the shots struck him,
> but they caused him to "back into a tree."  *Id.*   Finally, he
> alleges that "they," presumably the three named officers "had
> [him] on the ground in cuffs it was one officer who came and
> sat on [his] head with his knee while another use his black
> hard night stick to push and poke [him] in the back of [his]
> head and neck . . . ."  *Id.*  Finally, he alleges that defendants
> Ward and Hunt "was there," acknowledged that the force used
> was inappropriate, but did not intervene.  *Id.*

Doc. 7 at 8.  Defendants' Motion for Summary Judgment, supported by

their respective declarations,[1] explains that Graham was stopped after

he was identified as "a wanted subject with several felony warrants for

his arrest . . . ."  Doc. 23 at 3.  After observing him "frantically moving

around  inside  the  vehicle,"  Defendant  Hines  drew  his  weapon  and

---

[1]  While, on summary judgment, "[t]he evidence of non-movant is to be believed and
all justifiable inferences are to be drawn in his favor," *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 255 (1986), as defendants point out, *see generally* doc. 32, and as
discussed below, Plaintiff's factual presentation is limited, at best.  Since defendants
present a coherent narrative of the events at issue, the Court has relied on that
narrative in this summary, but does not assume those facts are true for purposes of
evaluating the Motion's merits.  Specific factual issues are addressed in the Court's
analysis below.

directed Graham to show his hands.  *Id.* at 4.  After multiple repeated

directions, Graham refused to comply.  *Id.*  When Graham continued to

"reach around" inside his vehicle, despite additional commands to show

his hands, Defendant Gashi deployed several "volleys" of "PepperBalls,"

which the Motion explains are "a non-lethal chemical agent delivery

system." *Id.* at 5-6, 5 n. 1; *see also Shuford v. Conway*, 666 F. App'x 811,

813 (11th Cir. 2016) (describing a "Pepperball gun, which shoots a high-

pressure plastic ball releasing pepper spray . . .").  After briefly showing

his hands, Graham put his vehicle into reverse and accelerated into

Defendant Hinds' vehicle, forcing Hinds "to jump back into his vehicle to

avoid being run over." *Id.* at 6.  Graham then struck a tree and his vehicle

became lodged on a railroad tie.  *Id.*

Graham, undaunted, continued to try to move the vehicle. *Id.*  at 7.

More Pepperballs were deployed and Defendant Ward "began striking

the front windshield with his baton . . . to keep Plaintiff from being able

to retrieve a weapon from inside the vehicle." *Id.*  When his attempts to

dislodge the vehicle were unsuccessful, Graham exited the vehicle and

attempted to flee on foot. *Id.*  He ignored commands to stop. *Id.* at 7-8.

More Pepperballs were deployed and Graham fell to the ground. *Id.* at 8.

After Graham had fallen, officers handcuffed him, despite his resistance. *Id.*   Officers provided him with water to address the effects of the Pepperballs and emergency medical services were summoned.   *Id.* Graham was taken to a local hospital and taken into custody after his medical clearance.   *Id.* at 8-9.   Upon a warranted search of the vehicle, officers discovered "trafficking amounts of fentanyl and MDMA as well as cocaine, methamphetamine, ecstasy pills, and other substances . . . ." *Id.* at 9.

Although Graham characterizes the sequence of events described in Defendants' Motion differently, he does not dispute them.   *See* doc. 30 at 4-5.   He contends that body-worn camera video, apparently the video submitted by Defendants, shows officers "hit, poke, and shove" him with a metal baton, kick him, and push his face into the ground.   *Id.* at 5.   He acknowledges that, after the incident, he was able to talk with the officers, was seen by emergency medical personnel, and was taken to a hospital before being taken to Chatham County Jail.   *Id.* at 5. Defendants' reply points out that Graham "has not contradicted

Defendants' factual assertions with any evidence or affidavits . . . ," which results in those facts being deemed admitted.  Doc. 32 at 3.

## ANALYSIS

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'"  *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* (internal citation and quotation omitted).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  *See Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of

proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. *See id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. *Anderson*, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., Fla.*, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(a)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no genuine issue of material fact." *Id.* (alteration, citation and emphasis omitted).

## A. The Record

Before discussing the details of Defendants' argument, an initial discussion of the record is necessary.  Defendants filed a Statement of Undisputed Material Facts in support of their Motion.  *See* doc. 23-7. Graham's response includes a section titled "Plaintiff Statement of Material Facts."  Doc. 30 at 4-6.  That statement does not refer or cite to any evidence. *See id.*  It does refer to several "photos," which are attached to the response. *See id.* at 5, 12-24.  As Defendants point out, those photos appear to be captured from the body-worn camera footage submitted with their Motion. *See* doc. 32 at 2, 2 n. 1.  He also refers to "BWC," which also appears to refer to the body-worn camera footage.  Doc. 30 at 5 ("BWC proves these facts.").  Graham's response does not include the fact-by-fact response contemplated by this Court's Local Rules. *See* S.D. Ga. L. Civ. R. 56.1 ("All material facts set forth in the statement . . . will be deemed to be admitted unless controverted by a statement served by the opposing party."); *see also* doc. 25 at 1 ("If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that

you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.").   The Court, therefore, deems admitted all portions of Defendants' statements having evidentiary support in, and not otherwise contradicted by, the record and which are not properly opposed by Plaintiff.  *See* S.D. Ga. L. Civ. R. 56.1; *Williams v. Slack*, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections).  Nevertheless, the Court does address Plaintiff's responses below, as appropriate.

Both parties rely on video of Graham's arrest recorded by several officers' body-worn cameras.  *See* doc. 23-1 at 6; doc. 23-4 at 12; doc. 23-6; *see also, e.g.,* doc. 30 at 11 ("Video footage of Exhibits will prove facts that[']s true and [illegible] with accuracy on Plaintiff [sic] behalf.").  Video evidence receives distinct treatment in evaluating motions for summary judgment.  The Supreme Court's opinion in *Scott v. Harris*, "stands for the commonsense proposition that when a video provides that the plaintiff can't be telling the truth, we don't accept the facts as he alleges

them, even for the purposes of deciding a summary-judgment motion."
*Brooks v. Miller*, 78 F.4th 1267, 1271 (11th Cir. 2023).  Under *Scott*, "two
important requirements must be met before [the court] can disregard the
non-moving party's version of events: (1) the recording (or other evidence)
must so utterly discredit the party's story that no reasonable jury could
have believed that party, . . . ; and (2) there must be no evidence that the
recording has been doctored or altered, . . . ."  *Id.* at 1278 (internal
quotation marks, alterations, and citations omitted).  "So if a valid
recording completely and clearly contradicts a party's testimony, that
testimony is not credible, and the court should disregard it."  *Id.*  The
video evidence submitted by Defendants, and apparently relied upon by
Graham, is discussed below.

## B. Excessive Force Claims

At summary judgment, "as to materiality, the substantive law will
identify which facts are material."  *Anderson*, 477 U.S. at 248.  As the
Court previously explained, doc. 7 at 9, the Fourth Amendment
"encompasses the right to be free from excessive force during the course
of a criminal apprehension.  [Cit.]  To establish a Fourth Amendment
claim for excessive force, a plaintiff must allege (1) that a seizure occurred

and (2) that the force used to effect the seizure was unreasonable." *Corbitt v. Vickers*, 929 F.3d 1304, 1315 (11th Cir. 2019) (internal quotation marks and citations omitted). "Under the Fourth Amendment, [courts] evaluate whether force is excessive by applying an objective reasonableness standard. [Cit.] That is, [they] ask whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Brooks v. Miller*, 78 F. 4th 1267, 1282 (11th Cir. 2023) (internal quotation marks and citations omitted).

As summarized above, the events at issue commenced when Graham was stopped. Although none of the submitted video recordings captured officers' initial contact with Graham or the first moments of the stop, those events are described in several officers' declarations. Defendant Hunt testifies that "while working in an undercover capacity assisting in a warrant sweep," he observed Graham, "who had active arrest warrants for felony fleeing to elude and felony possession of drugs." Doc. 23-5, at 1; *see also* doc. 23-7 at 1-2. Hunt merely followed Graham until he parked at a grocery store. Doc. 23 at 3; doc. 23-7 at 2. Several marked units then initiated the stop. Doc. 23-1 at 2; doc. 23-2 at 2; doc. 23-7 at 2. Defendant Ward testifies that when he arrived, "emergency

equipment was active on multiple police vehicles."  Doc. 23-2 at 2.
Graham "began frantically moving around inside the vehicle, reaching
into the center console, digging for something in the back seat, and
manipulating a black book bag."  Doc. 23-7 at 2; *see also* doc. 23-1 at 2;
doc. 23-2 at 2; doc. 23-3 at 2; doc. 23-4 at 2.  Graham also failed to comply
with multiple officers' "loud and clear commands to show his hands."
Doc. 23-7 at 3; *see also* doc. 23-1 at 2; doc. 23-2 at 2; doc. 23-3 at 2; doc.
23-4 at 2.  As discussed above, Graham does not effectively dispute
defendants' presentation of the facts.  However, on this point, he does not
even nominally dispute those facts.  *See* doc. 30 at 4 (noting that at the
time he heard the command to put his hands up, he was "reaching in the
back [of the car] for cell phone [sic]").  It is at this point in the sequence
of events that the videos begin.[2]

The footage from Officer Hinds' body-worn camera shows his
arrival behind Graham's car, as two other officers approach from either

---

[2]  Defendants submitted video recorded by three officers' body-worn cameras, Officer
Hinds, Officer O'Neil, and Officer Foraker.  *See*, e.g., doc. 23 at 3.  "In order for the
court to consider certain evidence on a motion for summary judgment, the evidence
must be admissible at trial or capable of being presented in admissible form at trial."
*Palmer v. Robbins*, 2021 WL 4487604, at *1 n. 3 (S.D. Ga. Sept. 30, 2021) (internal
quotation marks and citations omitted).  Among the requirements for admissibility is
authentication, pursuant to Federal Rule of Evidence 901(a).  *See id.*  Officers Hinds
and O'Neil submitted declarations which, in the absence of any challenge to their

side.  The officer to the right of the frame, identified as Officer Gashi, *see,*

*e.g.,* doc. 23 at 5, is clearly holding the Pepperball gun.  The officer to the

left of the frame, identified as Defendant O'Neil, *id.* at 6, is obscured by

Hinds' arm.  The audio records clear commands to Graham to show his

hands.  It appears that the officer to the right fires several Pepperballs

shortly after the command was issued.  Several more Pepperballs appear

to strike the car from the left.  Almost immediately after the video shows

the Pepperball strikes from the left, Graham puts the car into reverse

and accelerates quickly directly toward Hinds.  His car apparently strikes

the door of Hinds' vehicle.

Hinds' body-worn camera does not clearly record events between

Graham's car hitting his vehicle and Graham's flight on foot.  It does,

however, record officers subduing Graham after he falls to the ground.  It

clearly shows an officer holding a metal baton and using it to hold

---

authenticity, supports their consideration. *See id.* (discussing declarations sufficient to authenticate video recordings).  However, there is nothing in Defendants' summary judgment materials that even purports to authenticate the video recorded by Foraker's body-worn camera.  *See generally* doc. 23.  Although Graham has not challenged the authenticity of the video, given the lack of any authenticating testimony, the Court does not consider the Foraker footage here. *See, e.g., Snover v. City of Starke, Fla.*, 398 F. App'x 445, 449 (11th Cir. 2010) ("Because the defendants merely filed the [video recording] and did not authenticate it, the district court did not abuse its discretion in declining to consider [the video recording].").  Although Foraker's video is not considered, the Court has reviewed it and confirmed that it does not record anything contradicting the other videos or testimony.

Graham's upper body on the ground.  It also shows that the officer holding the baton has placed his knee on Graham's shoulder.  Two other officers grab Graham's hands and place them in handcuffs.  Throughout the process of subduing Graham, officers direct him to "stop," but he continues to resist.  As soon as Graham's hands are secured, all of the officers move away from him.  After that point, Hinds' body-worn camera does not record officers' interactions with Graham.

Officer O'Neil's body-worn camera begins recording after Graham's car has struck the tree and is stuck on a railroad tie.  It clearly shows that Graham is accelerating in an attempt to continue his flight.[3]  O'Neil shoots additional Pepperballs into the passenger side of Graham's car.  Another officer strikes the windshield with a metal baton.  Graham then opens the driver's side door and flees on foot.  O'Neil shoots him with a Pepperball and he falls to the ground.  O'Neil's body-worn camera does not capture officers' efforts to subdue Graham.

---

[3]  Although it is not entirely clear, it appears that Graham has shifted out of reverse gear and is attempting to accelerate forward.  Although it is not directly relevant, the video, therefore, suggests he is intentionally attempting to flee, and not simply disoriented.  *See, e.g.,* doc. 30 at 4 ("As Plaintiff scared for his life being shot at in a running vehicle trying to cover his face he (Plaintiff) reacted of miss [sic] and hit the gas out of fear in reverse . . . .").

13

"Determining whether the force used to effectuate a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotations omitted). "In determining the reasonableness of the force applied, [courts] look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate[,]" keeping in mind "that officers make split-second decisions in tough and tense situations." *Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013) (internal quotation marks and citations omitted).

Evaluating whether use of force violates the Fourth Amendment involves two steps. *Charles v. Johnson*, 18 F.4th 686, 699 (11th Cir. 2021). First, the Court must determine whether the type of force used is categorically unconstitutional. *Id.* Second, if the force is not categorically unconstitutional, the Court evaluates whether it was excessive, applying the factor-test established in *Graham*. *Id.* Among the specific factors

courts consider are "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal quotation marks omitted).  If force is necessary, courts also consider whether the amount of force used was reasonable, considering "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1324 (11th Cir. 2017).  There is no question that the force at issue, Pepperballs and grabbing and handcuffing, are not categorically unconstitutional.  *See, e.g., Clinch v. Chambers*, 2024 WL 644567, at *10 (S.D. Ga. Feb. 15, 2024); *Estate of May by and through Myrick v. Naphcare, Inc.*, 2022 WL 327206, at *7 (N.D. Ga. Feb. 3, 2022), *aff'd in relevant part sub nom. Myrick v. Fulton Cnty, Ga.*, 69 F.4th 1277 (11th Cir. 2023).

Defendants argue that the force used to subdue Graham was reasonable, given the threat he posed and his persistent attempts to flee and resist arrest.  *See* doc. 23 at 13-20.  First, it is undisputed that, before any force was deployed, Graham was reaching into the backseat of his car.  As courts, including the Eleventh Circuit, have recognized, "[t]he

law does not require an officer to wait and see whether an individual is reaching for his wallet or his weapon." *Elliot v. City of Pleasant Grove, Ala.*, 2018 WL 144263, at *9 (N.D. Ala. Mar. 22, 2018) (citing *Long v. Slaton*, 508 F.3d 576, 581 (11th Cir. 2007)).  The fact that Graham was initially stopped because there were warrants for his arrest, including one for felony fleeing or attempting to elude police officers, *see* doc. 23 at 14, emphasizes the reasonableness of their concern with his behavior. Given the clear threat, the limited use of the Pepperballs was entirely reasonable.  *See, e.g., Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002) ("Courts have consistently concluded that using pepper spray is reasonable . . . where the plaintiff was . . . refusing police requests . . . ."); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1245 (11th Cir. 2003) ("Pepper spray is an especially noninvasive weapon . . . ."); *Warren v. Douglas Police Dept.*, 2010 WL 282891, at *4 (S.D. Ga. Jan. 21, 2010) ("Defendants' use of pepper spray was not unreasonable in the circumstances since Plaintiff refused to obey Defendants' orders.").

Almost immediately after Graham was hit with the Pepperballs, the video evidence shows that he put his car into reverse and accelerated rapidly toward Officer Hinds, who had to jump into his vehicle to avoid

being struck.   Based on the officers' unanimous and unrebutted testimony, Graham continued in reverse until his car struck a tree and became entangled on a railroad tie.  *See* doc. 23-2 at 2; doc. 23-3 at 3; doc. 23-4 at 2.  Moreover, Graham did not immediately stop the car.  The video clearly shows that the tires continued to spin, despite the railroad tie. Thus, regardless of Graham's intent, it was reasonable for officers to fear he was attempting to continue his flight or attempting to use the car as an offensive weapon.[4]  "Faced with an uncooperative motorist, who posed a continued risk of flight," an officer's decision to pepper spray the driver is reasonable.  *Kenney v. Floyd*, 700 F.3d 604, 610 (1st Cir. 2012); *see also, e.g., Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 739 (11th Cir. 2010) (stating, in discussion of qualified immunity, "this Court has noted that the use of pepper spray is not excessive force in situations where the arrestee poses a threat to law enforcement officers or others, uses force against, officers, physically resists arrest, or attempts to flee, in which cases pepper spray is a permissible way to disable a suspect without

---

[4] As Defendants point out, given the appearance that Graham might have attempted to use his vehicle offensively, considerably more force might have been justified.  Doc. 23 at 17 (citing *Small v. Glynn Cnty., Ga.*, 77 F. Supp. 3d 1271, 1280 (S.D. Ga. 2014) (finding use of deadly force was justified where the suspect "willfully fled . . . drove recklessly . . . and bump[ed] a police car[, p]utting officers in fear of being hit by her car . . . .")).

causing permanent physical injury," and collecting cases (internal quotation marks and citation omitted)).  The same analysis applies to the use of additional Pepperballs as Graham fled his car on foot.

Finally, the video evidence completely contradicts Graham's allegations concerning officers' attempts to subdue him after he fled on foot.  His assertions—as discussed above, completely unsupported by any evidence—that officers struck him with the metal baton, kicked him, and kneeled on his "face, head, and neck," *see* doc. 30 at 5, are all clearly contradicted by the video recordings.  Those recordings show that officers applied minimal force to ensure that Graham would be unable to flee and to secure his hands in handcuffs.  The moment his hands were secured, the officers ceased their forceful restraint.  As Defendants' brief points out, Graham's persistent attempts to flee, even ignoring the manifest physical threat posed by those attempts, renders the use of force necessary to place him in handcuffs entirely reasonable.  *See, e.g., Williams v. City of Montgomery*, 839 F. App'x 356, 362 (11th Cir. 2020) ("When [suspect] resisted arrest and refused to comply with the officers' orders, the officers followed standard procedures by forcing [the suspect] to the ground and using their body weight to restrict his movements until

they could apply handcuffs.  We have approved officers using similar force in situations that were less perilous." (citation omitted)).

Graham's contentions that the force applied was motivated by racial animus are irrelevant in evaluating whether the force was reasonable, under the Fourth Amendment.  The objective nature of the inquiry under the Fourth Amendment excludes any consideration of the officers' subjective motivations.  In *Graham*, the Supreme Court expressly found that "the subjective motivations of the individual officers . . . has no bearing on whether a particular seizure is 'unreasonable' under the Fourth Amendment."  490 U.S. at 397.  "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force . . . ."  *Id.*  Graham's various assertions that the officers "committed a hate crime," doc. 30 at 6, or "did this out of hate," *id.* at 9, do not weigh in the Court's analysis.

Based on the undisputed evidence of record, including especially the body-worn camera videos, the Court has little difficulty concluding that all of the force used in the course of Graham's arrest was objectively reasonable.  Officers intended to arrest Graham on outstanding warrants for felony fleeing or attempting to elude police officers.  When confronted,

Graham's behavior threatened the possibility that he was searching for a weapon.  Based on those threats, officers used minimal force, in the form of Pepperballs.  Graham then escalated his threats by, charitably,[5] driving recklessly in an attempt to flee.  Again, officers used minimal force, again in the form of Pepperballs.  Finally, Graham fled on foot and, again, officers used minimal force to secure him in handcuffs.  As courts, including the Eleventh Circuit, have recognized, "the typical arrest involves some force and injury."  *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002).  Since there is no dispute of material fact that defendants' use of force was reasonable, they are entitled to summary judgment.

As Defendants finally point out, since the force used was objectively reasonable, Plaintiff's claim, against Defendant Hunt or any other officer, for failing to intervene also fails.  *See* doc. 23 at 20 (citing *Wilis v. Mitchell*, 2022 WL 4087534, at *6 (S.D. Ga. Sept. 6, 2022) (where "Plaintiff has failed to establish an underlying unconstitutional use of excessive force . . . , Plaintiff's failure-to-intervene claim fails as a matter

---

[5] As discussed above, the officers might reasonably have regarded Graham's conduct as intentionally aggressive, which might have justified considerably more significant force.

of law.")); *see also Clinch*, 2024 WL 644567, at *15. As the Eleventh Circuit has succinctly stated: "Plainly, an officer cannot be liable for failing to stop or intervene when there was no constitutional violation being committed." *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019).

### C. Qualified Immunity

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The doctrine is "intended to 'allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). As a result, qualified immunity "liberates government agents from the need to constantly err on the side of caution by protecting them both from liability 'and the other burdens

of litigation, including discovery.'"  *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003) (quoting *Lambert v. Fulton Cnty.*, 253 F.3d 588, 596 (11th Cir. 2001)).  But qualified immunity does not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff."  *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)).

To rely upon qualified immunity, a defendant must first show that he acted within his discretionary authority.  *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1352 (11th Cir. 2015).  Specifically, a defendant must show that he "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).  If a defendant shows that he was acting within his discretionary authority, "the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity," by showing both that the defendant violated a constitutional right and

that the violation was clearly established. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007).

Defendants correctly point out that effecting an arrest is within law enforcement officers' discretionary authority. Doc. 23 at 20; *see, e.g.*, *McDowell v. Gonzalez*, 820 F. App'x 989, 991 (11th Cir. 2020) (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) ("A police officer generally acts within the scope of his discretion when making an arrest."). Graham has not responded at all to Defendants' qualified-immunity argument. *See generally* doc. 30. As discussed above, Graham has failed to show that any defendant violated his constitutional rights. Defendants are, therefore, also entitled to summary judgment on their qualified immunity defense.

## CONCLUSION

Since there is no dispute of material fact that the force Defendants used in arresting Graham was objectively reasonable, they are entitled to summary judgment on his Fourth Amendment claim. Moreover, the reasonableness of the force precludes any claim that any defendant failed to intervene. Finally, Defendants have shown that the conduct at issue was within their discretionary authority, and Graham has not borne his

burden to show that they are not entitled to qualified immunity. Accordingly, Defendants' Motion for Summary Judgement should be **GRANTED**. Doc. 23.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 29th day of February, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA